UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERIC J. KIKKERT,<br>　　　　　Plaintiff,<br><br>　　v.<br><br>DONALD TRUMP, *et al.*,<br>　　　　　Defendants. | CASE NO. 2:25-cv-00861-JHC<br><br>ORDER |

**I**
**INTRODUCTION**

Before the Court is Defendants' Motion to Dismiss, Dkt. # 13, and Plaintiff's Motion for Leave to File Supplemental Evidence,[1] Dkt. # 20. The Court has reviewed the materials filed in connection with the motions, the record, and the governing law. Being fully advised, the Court GRANTS Defendants' Motion to Dismiss, DENIES Plaintiff's Motion for Leave to File Supplemental Evidence, and DISMISSES this matter with prejudice.

**II**
**BACKGROUND**

According to the complaint, Plaintiff, Eric J. Kikkert, is a U.S. Army veteran, federal taxpayer, and current resident of King County, Washington. Dkt. # 1 at 1. Plaintiff brings this

---

[1] This motion was not properly noted; nor was any response filed. But as mentioned below, it must be denied as moot.

ORDER - 1

action against Defendants President Donald Trump (President of the United States), Representative Tom Cole (Chair of the House Appropriations Committee), Senator Susan Collins (Chair of the Senate Appropriations Committee), Representative Mike Johnson (Speaker of the House), and Senator John Thune (Senate Majority Leader) in their official capacities.[2]  *Id.* at 3.  Plaintiff alleges that by using federal taxes to fund Israel's recent military operations, Defendants have breached numerous international treaties, federal statutes, and provisions of the U.S. Constitution.  *Id.* at 2.  Plaintiff further alleges that he has standing to bring this suit, claiming that his "$72.72 in 2023 excise taxes are part of the $3.8 billion in annual U.S. military aid to Israel" and said aid is "causing Plaintiff irreparable spiritual harm by forcing him to contravene his faith and his veteran's oath to defend the Constitution, a sacred text in his religion, and desecrating his familial legal of military service spanning give generations."  *Id.* at 4.  Plaintiff seeks a declaratory judgment and permanent injunctive relief.  *Id.* at 8.

Defendants move to dismiss Plaintiff's claims for lack of subject-matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. # 13.  Plaintiff cross-moves for leave to file supplemental evidence under Federal Rule of Civil Procedure 15(d) and Local Civil Rule 7.  Dkt. # 20.

### III
#### DISCUSSION

A.   Subject Matter Jurisdiction & Article III Standing

Federal Rule of Civil Procedure 12(b)(1) applies to a motion to dismiss for lack of subject matter jurisdiction.  The party invoking federal jurisdiction bears the burden of proving

---

[2] Plaintiff previously filed suit in state court against the State of Washington and the "United States Federal Government."  The case raised similar claims and factual allegations as the present case.  The case was removed to federal court in April 2025 and then dismissed with prejudice for lack of subject matter jurisdiction.  *See Kikkert v. Washington, et al.*, No. 25-00746-TL, Dkt. # 23 (Apr. 30, 2025).

ORDER - 2

it. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). A defendant may contest jurisdiction through a "facial" attack, in which the defendant accepts the truth of the plaintiff's allegations but asserts that they are "'insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). In resolving a facial attack, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in plaintiff's favor. *Id*. The court then must determine "whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.* (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). If, at any time, a federal court determines that it lacks subject-matter jurisdiction, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

One component of subject matter jurisdiction under Article III is standing. As noted by the Supreme Court, "[f]ederal courts do not possess a roving commission to publicly opine on every legal question" nor do they "exercise general legal oversight of the Legislative and Executive Branches." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Instead, Article III limits the power of the federal courts to decide cases and controversies where plaintiffs can demonstrate a sufficient "personal stake" in the outcome. *Id*. For a plaintiff to have a sufficient "personal stake" in the outcome, or "standing," they must demonstrate: (1) "an injury in fact that is concrete, particularized, and actual or imminent" which is (2) "fairly traceable to the challenged action" and (3) likely "redressable by a favorable ruling." *See id.*; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

In the context of suits against the government, the Supreme Court has been clear: "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not

state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74.  Accordingly, the Supreme Court has instructed district courts to deny standing to plaintiffs based on mere allegations of statutory or constitutional violations in the absence of other concrete harm.  *See TransUnion*, 594 U.S. at 426 (statutory violations); *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 474 (1982) (constitutional violations).  It has also discouraged lower courts from recognizing "standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."  *Clapper*, 568 U.S. at 413.

Most notably for this case, the Supreme Court has repeatedly held that the mere fact of being a taxpayer is not enough to establish Article III standing.[3]  The only exception to this general rule is a narrow exception provided by *Flast v. Cohen*, 392 U.S. 83 (1968).  In *Flast*, the Supreme Court held that plaintiffs bringing an Establishment Clause challenge can assert standing based on their taxpayer status if they can establish: (1) "a logical link between that status and the type of legislative enactment attacked"; and (2) "a nexus between that status and the precise nature of the constitutional infringement alleged." *Id.* at 102.  But the Supreme Court has also "repeatedly emphasized that the *Flast* exception has a narrow application" and "must be applied with rigor."  *Hein*, 551 U.S. at 609 (citations omitted).  Plaintiffs who rely on *Flast* to assert standing thus face an uphill battle.

---

[3] *See, e.g.*, *Frothingham v. Mellon*, 262 U.S. 447, 488 (1923) ("The party who invokes the power [of judicial review] must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally."); *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 130 (2011) ("[T]he mere fact that a plaintiff is a taxpayer is not generally deemed sufficient to establish standing in federal court."); *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 599 (2007) ("As a general matter, the interest of a federal taxpayer in seeing that Treasury funds are spent in accordance with the Constitution does not give rise to the kind of redressable 'personal injury' required for Article III standing."); *Bowen v. Kendrick*, 487 U.S. 589, 618 (1988) ("[W]e have consistently adhered to *Flast* and the narrow exception it created to the general rule against taxpayer standing.").

ORDER - 4

If a party invoking federal jurisdiction fails to establish injury-in-fact, causation, redressability, or all three, the court cannot find Article III standing and must dismiss the complaint for lack of subject matter jurisdiction. *See generally Lujan*, 504 U.S. at 561.

B.     Analysis

Defendants argue that Plaintiff's complaint must be dismissed for lack of standing.[4] *See* Dkt. # 13 at 5–7. Having reviewed the record and the applicable case law, the Court agrees.

Plaintiff has not met his burden of establishing the three elements of Article III standing. As for injury-in-fact, Plaintiff contends that has standing under *Flast*, "as a taxpayer challenging specific appropriations under the 2023 NDAA that violate constitutional limits," and under *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993), "due to a concrete, particularized injury to his Free Exercise rights caused by compelled funding of acts that desecrate his faith." Dkt. # 1 at 5. But neither *Flast* nor *Church of Lukumi* provides an adequate basis to confer Article III injury-in-fact.

As for his *Flast* argument, Plaintiff is correct that in some circumstances, "*Flast* permits taxpayer standing for challenges to congressional spending violating specific constitutional limits." Dkt. # 18 at 2. But Plaintiff misunderstands how *Flast* has been applied by courts to date.[5] First, *Flast* and its progeny are primarily focused on Establishment Clause challenges. As noted in *Flast*, "[t]he Establishment Clause was designed as a specific bulwark against [ ] potential abuses of governmental power" and "operates as a specific constitutional limitation

---

[4] Defendants also argue that Plaintiff's complaint must be dismissed on other grounds (claim preclusion, political-question doctrine, Speech-or-Debate Clause, and no cause of action). *See* Dkt. # 13 at 3. But, because the Court's resolution of Defendants' standing argument disposes of the entire case, the Court declines to address Defendants' other arguments.

[5] The Court notes that in addition to cases, Plaintiff cites analyses from various legal sources (*Cornell LII*, *Harvard Law Review*, etc.). *See* Dkt. #15. But as this Court is bound exclusively by Supreme Court and Ninth Circuit precedent, the standing analyses in these secondary sources cannot override or alter the specific holdings and principles contained in the underlying caselaw. The Court thus declines to address them here.

ORDER - 5

upon the exercise by Congress of the taxing and spending power conferred by Art. I, s 8." *Flast*, 392 U.S. at 104.  Here, however, Plaintiff does not bring an Establishment Clause challenge.  *See generally* Dkt. # 1.  This distinguishes this matter from Plaintiff's cited cases.[6]

Second, Plaintiff's case is beyond the scope of the challenges recognized under the *Flast* exception.  As for Plaintiff's claims against the President, "challenges to actions of the executive branch are not cognizable in a federal taxpayer action."  *Mahorner v. Bush*, 224 F. Supp. 2d 48, 51 (D.D.C. 2008) (citations omitted); *see also Valley Forge*, 454 U.S. at 479.  Plaintiff thus cannot use *Flast* to assert standing for his claims against the President.  Plaintiff's claims against the members of Congress also fail, as *Flast* does not give rise to general taxpayer standing whenever Congress violates a statute, constitutional provision, or other obligation.  Rather, *Flast* applies only when a taxpayer asserts that in exercising its taxing and spending powers, Congress has exceeded a specific constitutional limitation on its taxing and spending power.[7]  As Plaintiff has not alleged that Congress has violated any specific *constitutional* limitation on its *taxing and spending power*, Plaintiff cannot avail himself of the *Flast* exception here.

Finally, the Supreme Court has consistently emphasized the narrow nature of the *Flast* exception.[8]  In fact, since *Flast* was decided, the Supreme Court has declined to recognize taxpayer standing in many cases, particularly in cases involving challenges that are not brought under the Establishment Clause.[9]  As this Court is bound by this case law, it is not able to adopt a

---

[6] *See, e.g.*, *Flast*, 392 U.S. at 85 (Establishment Clause challenge); *Bowen*, 487 U.S. at 620 (same); *Awad v. Ziriax*, 670 F.3d 1111, 1121 (10th Cir. 2012) (same).  Plaintiff's other cited case, *Sherley v. Sebelius*, 689 F.3d 776 (D.C. Cir. 2012), does not recognize standing under the *Flast* test, instead relying on the doctrine of competitor standing.

[7] *See Flast*, 392 U.S. at 106; *Valley Forge*, 454 U.S. at 480; *Americans United for Separation of Church & State v. Reagan*, 786 F.2d 194, 199 (3d Cir. 1986).

[8] *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 348 (2006); *Bowen*, 487 U.S. at 618; *Hein*, 551 U.S. at 609.

[9] *See, e.g.*, *DaimlerChrysler*, 547 U.S. at 349 (rejecting standing based on federal taxpayer status under the Commerce Clause); *United States v. Richardson*, 418 U.S. 166, 174 (1974) (rejecting standing

novel or expanded understanding of the *Flast* exception in this case. Accordingly, the Court concludes that Plaintiff has failed to establish Article III injury-in-fact under *Flast*.

As for his Free Exercise argument, Plaintiff fails to allege specific facts to give rise to Article III standing. As the Ninth Circuit recently explained, a party bringing a Free Exercise Clause challenge can establish injury-in-fact by demonstrating a concrete injury to their ability to exercise their religion. *Kumar v. Koester*, 131 F.4th 746, 754 (9th Cir. 2025). Being "offended by an alleged association," however, is not enough to give rise to Article III standing. *Id.* Like the plaintiffs in *Kumar*, Plaintiff's claim that the government's funding of Israeli military operations using federal taxes operations has "force[d] him to commit sacrilege" and is causing "irreparable spiritual distress," *see* Dkt. # 1 at 2, does not amount to an alleged injury to his ability to exercise his religion. It is thus insufficient to establish Article III injury-in-fact.

Because Plaintiff has not established injury-in-fact, the Court finds that Plaintiff lacks Article III standing and thus the complaint must be dismissed for lack of subject matter jurisdiction. The Court also finds that given the nature of Plaintiff's claims, amendment would be futile, as the allegation of additional facts cannot change the reality that Plaintiff lacks standing to bring these claims. In reaching this conclusion, however, the Court makes no judgment as to the legitimacy of Plaintiff's concerns or the merits of the legal arguments and factual allegations of the complaint. Rather, in dismissing Plaintiff's case for lack of subject matter jurisdiction, the Court merely seeks to uphold the well-established principle that federal courts are courts of limited jurisdiction and may only decide those "Cases" and "Controversies" which Article III identifies as "the business of the courts rather than of the political branches." *Lujan*, 504 U.S. at 576.

---

based on federal taxpayer status under Article I, § 9, cl. 7); *Valley Forge*, 454 U.S. at 482 (rejecting standing based on federal taxpayer status under the Property Clause).

ORDER - 7

## IV
## CONCLUSION

Because the Court lacks subject matter jurisdiction and amendment would be futile, the Court GRANTS Defendants' motion and DISMISSES Plaintiff's complaint with prejudice. As Plaintiff's case is dismissed, the Court DENIES Plaintiff's motion as moot.[10]

Dated this 1st day of October, 2025.

John H. Chun
United States District Judge

---

[10] The Court notes that granting this motion would have no effect on the standing analysis above.